**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Robert J. Anderson and Amber L. Anderson,<br><br>Debtors.<br>_____<br><br>Amber L. Anderson,<br><br>Plaintiff.<br><br>v.<br><br>Republic Finance, LLC and Horry County,<br><br>Defendants. | Case No. 22-00147-dd<br><br>Chapter 7<br><br><br><br>**Adv. Pro. No. 22-80016-dd**<br><br><br><br><br><br>**DEFENDANT HORRY COUNTY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, AND MEMORANDUM IN SUPPORT THEREOF** |

Defendant Horry County (the "**County**") hereby moves pursuant to Rule 12 of the Federal Rules of Civil Procedure ("**FRCP**"), made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, for an Order dismissing the Complaint filed on April 6, 2022 (the "**Complaint**") by Plaintiff Amber L. Anderson ("**Plaintiff**" or "**Ms. Anderson**").

In the Complaint, Plaintiff alleges that pursuant to 11 U.S.C. § 362, the County willfully violated the automatic stay. The Complaint should be dismissed under Rule 12(b)(6), FRCP, for failure to state a claim upon which relief may be granted.

**FACTUAL BACKGROUND**

This adversary proceeding arises out of a municipality's alleged violation of the automatic stay based on a magistrate court's inadvertent mistake in not removing the Plaintiff's case from the state court docket. Plaintiff filed a Chapter 7 bankruptcy petition on January 21, 2022. (Compl. ¶ 6). As of the petition date, Plaintiff was a defendant in a state court action filed in Horry County

Magistrate Court (the "**Magistrate Court**") by Republic Finance, LLC ("**Republic**"). Ms. Johnson alleges that through her attorney, she notified the County's Magistrate Clerk of Court (the "**Magistrate Clerk**") of her bankruptcy filing on January 24, 2022, who informed her attorney that the state court matter would be removed from the docket. (Compl. ¶ 12).

On March 2, 2022, the Magistrate Court inadvertently mailed a notice of status conference to Ms. Johnson and Republic, scheduling a status conference in the state court case for March 29, 2022. (Compl. ¶ 14, Ex. E). Not realizing the error made in scheduling the status conference, the Magistrate Court held the status conference as scheduled on March 29, 2022. (Compl. ¶ 15). That said, neither party appeared at the status conference, and per the Magistrate Court's normal procedure, the Magistrate Court mailed a trial summons that same day, summoning the parties to appear for trial on April 26, 2022. (Compl. ¶ 15). Ms. Johnson states that she received the summons on April 4, 2022. (Compl. ¶ 15). She filed this adversary proceeding two days later on April 6, 2022, alleging violations of the automatic stay based on conduct of the Magistrate Clerk and a County Magistrate Judge (the "**Magistrate Judge**").

In her Complaint, Plaintiff alleges she is entitled to actual damages for the County's willful violation of the automatic stay. (Compl. ¶ 25). Plaintiff further claims that Republic's and the County's conduct "is appropriate for the imposition of punitive damages to deter this type of egregious creditor activity since not only are there multiple willful violations of the automatic stay, but also there has been an abuse of process in this case." (Compl. ¶ 18).

## LEGAL STANDARD

A motion to dismiss should be granted if the plaintiff's complaint fails to state a claim upon which relief can be granted. FRCP 12(b)(6). In evaluating a FRCP 12(b)(6) motion, the Court must accept the well-pleaded factual allegations of the complaint as true. *Estate Constr. Co. v.*

*Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217–18 (4th Cir. 1994). However, allegations constituting mere legal conclusions are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Under *Iqbal*, the court has to consider two prongs when evaluating a motion to dismiss:

> First, bearing in mind that a court must accept as true all factual allegations in the complaint, this court must segregate allegations that are factually supported and those which are mere legal conclusions and not entitled to a presumption of truth. Second, this court must determine whether the remaining factual allegations in the complaint state a plausible claim for relief, based on 'judicial experience and common sense.'

*Montague v. Dixie Nat'l Life Ins. Co.*, C/A No. 3:09-687-JFA, 2010 WL 753342, at *2 (D.S.C. Feb. 26, 2010) (internal citations omitted).

Thus, to survive a motion to dismiss, a claim must be determined to have facial plausibility. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Montague*, 2010 WL 753342, at *1 (quoting *Iqbal*, 556 U.S. at 678); *see also McQuatters v. Town of Irmo Corp.*, C/A No. 3:10-1375-CMC-PJG, 2011 WL 3555689, at *5 (D.S.C. July 27, 2011). "Recitals of the elements of a cause of action bolstered only by conclusory statements will fail to insulate a pleader from a motion to dismiss." *Id*.

## ARGUMENT

1. **Plaintiff's Section 362 Claim Against the County Is Barred Because It Arises Out of Conduct Which Is Subject to Absolute Judicial Immunity.**

The alleged conduct by the Magistrate Judge cannot form the basis for a Section 362 claim because her conduct and that of her clerk staff are subject to complete judicial immunity. It is well settled that magistrate judges and their clerks / staff are entitled to absolute judicial immunity from claims arising out of their judicial acts. *See Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985) ("It

has long been settled that a judge is absolutely immune from a claim for damages arising out of his judicial acts."); *see also McCray v. Maryland*, 456 F.2d 1, 5 (4th Cir. 1972) ("[C]ourt clerks enjoy derivative absolute judicial immunity when they act in obedience to a judicial order or under the court's direction."); *see also Taylor v. Brooks*, No. 3:15-1138-RMG, 2015 WL 4274834, at *2 (D.S.C. July 14, 2015) ("It is well settled that the clerk and other staff member[s] of the [c]ourt have a derivative of judicial immunity known as quasi-judicial immunity for alleged actions taken in the course of their court duties.") (citations omitted). "Such immunity applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985) (citations and internal quotation marks omitted). "This rule holds true even where the action seeks damages for violation of the automatic stay." *Womack v. Mays (In re Womack)*, 253 B.R. 241, 243 (Bankr. E.D. Ark. 2000) (citing *Coates v. Peachtree Apartments (In re Coates)*, 108 B.R. 823, 825 (Bankr. M.D. Ga. 1989)).

Here, the alleged stay violations against the County include the Magistrate Court issuing a notice of status conference and trial summons to Plaintiff. (Compl. ¶¶ 14–15). These allegations arise out of actions by the Magistrate Judge and Magistrate Clerk within their capacities as judicial officers; as such, Plaintiff's claim is barred by the doctrine of judicial immunity. *See Green v. North Carolina*, No. 4:08-CV-135-H, 2010 WL 3743767, at *3 (E.D.N.C. Sept. 21, 2010) ("All claims which arise out of actions by the superior court judge and/or the clerk of court within their capacities as judicial officers are barred by the doctrine of judicial immunity and therefore dismissed."); *see also Honour v. Cooper*, 174 Fed. App'x 782, 782 (4th Cir. 2006) ("To the extent that [plaintiff] objects to the handling of his prior cases by judges and court staff, we note that both courts and their staff are entitled to judicial immunity."); *see also Hallmark Care Servs., Inc. v.*

*Superior Court of Washington for Spokane Cty.*, No. 2:19-CV-0102-TOR, 2019 WL 2718500, at *5 (E.D. Wash. June 28, 2019) ("[T]he Court concludes that Defendants Spokane County Superior Court and Spokane County—acting through their judges and commissioners—acted in a normal judicial function and well within their jurisdiction. Accordingly, the Court finds that Defendants Spokane County Superior Court and Spokane County are entitled to judicial immunity from Plaintiffs' claims."); *Plyler v. Burns*, 373 S.C. 637, 647–48, 647 S.E.2d 188, 194 (2007) (extending judicial immunity of probate judge to probate court itself where allegations involving the probate court "concern only those acts which would be considered judicial in nature").

Even if Plaintiff could show that the County itself is not immune for conduct that is subject to judicial immunity, her claim must still fail because the County has no control over the actions taken by state court judges who are controlled by South Carolina's judicial branch; thus, the County cannot be held liable for their alleged misconduct. "The Supreme Court of South Carolina, the Court of Appeals of South Carolina, Court of General Sessions, Court of Common Pleas, Family Courts, Probate Courts, magistrate's courts, and municipal courts are in a unified judicial system." *Cole v. Bennett*, C/A No. 9:07-cv-03748-SB-GCK, 2007 WL 5322692, at *1 (D.S.C. Nov. 26, 2007) (citing S.C. Const, art. V, § 1). Magistrate judges are judges in South Carolina's unified judicial system. *Cole*, 2007 WL 5322692, at *1 (citations omitted).

Under South Carolina law, magistrate judges are appointed by the Governor with the advice and consent of the Senate. S.C. Code Ann. § 22-1-10. Magistrate judges are regulated by the Commission on Judicial Conduct, an arm of the South Carolina Supreme Court. *See* Rule 3, RJDE, Rule 502, SCACR. As such, municipalities in South Carolina do not control magistrate judges. *See Douglas v. McCleod*, 277 S.C. 76, 80, 282 S.E.2d 604, 606 (1981) ("Article VIII [of the South Carolina Constitution] effectively withdraws administration of the State judicial system

5

from the field of local concern."); *see also Davis v. Cty. of Greenville*, 322 S.C. 73, 77, 470 S.E.2d 94, 96 (1996) ("[I]t is clear under article VIII that counties have no authority to alter the structure of the magisterial branch of the judicial system.").

In *Allen v. Fidelity & Deposit Co. of Md.*, 515 F. Supp. 1185 (D.S.C. 1981), the court addressed whether Aiken County could be held liable for alleged violations of the Civil Rights Act based on conduct of the Sheriff of Aiken County and his deputies. The court held that it could not and summarized its reasoning as follows:

> To allow the County to be held accountable for the actions of the sheriff and his deputies over whom it has no control as to the manner in which they perform their official duties and whom it cannot hire, fire, discipline or train relative to the performance of the duties of their offices, would be to subject the County to unbridled and unlimited liability over which it has no control and over which it is prevented from exercising any such control. There can be no responsibility for the acts of another where there is no authority to control such acts or the persons perpetrating such acts. To hold otherwise would be to authorize unlimited raids on the public treasury which would bankrupt the county and its tax-paying citizens. To prevent such is precisely the purpose of the statute fixing responsibility and authority in the sheriff. As the sheriff has such responsibility and authority, it is to him, and him alone, that the plaintiff must look for a redress of her grievances, and . . . this action must be dismissed as to defendant, County of Aiken.

*Id.* at 1191; *see also S. Holdings, Inc. v. Horry Cty., S.C.*, C/A No. 4:02-1859-RBH, 2005 WL 8144891, at *10 (D.S.C. July 14, 2005). Similarly, the County does not hire its magistrate judges, nor does it control their conduct. The judges are appointed by the Governor and regulated by South Carolina's judicial branch. For these reasons, the County cannot be held liable for the Magistrate Judge's and Magistrate Clerk's alleged misconduct.

**2. Plaintiff's Claim Against the County Also Is Barred Because a State Court Judge, acting in Her Judicial Capacity, Is Not an "Entity" Subject to Section 362 Liability.**

Plaintiff's Section 362 claim against the County—which derives from actions taken by a magistrate judge (and her staff) acting in her official capacity—is barred because a state court judge is not an "entity" for purposes of Section 362(a). Section 362(a) provides that "a petition [for

6

bankruptcy relief] . . . operates as a stay, applicable to all entities, of – (1) the . . . continuation . . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(1). In general terms, the automatic stay prohibits acts of debt collection and prosecution by certain "entities." *See In re Sammon*, 253 B.R. 672, 681 (Bankr. D.S.C. 2000) ("[T]he automatic stay serves to protect the bankruptcy estate from actions taken by creditors outside the bankruptcy forum.").

An "entity" is "a person, estate, trust, governmental unit, and United States trustee." 11 U.S.C. § 101(15). By the plain language of the statute, if an actor is not an "entity," then the automatic stay does not apply to that actor. The Magistrate Judge is clearly not three of the five types of entities: she is obviously not an estate, a trust, or the United States Trustee. Similarly, the Magistrate Judge is not a "person" for purposes of this matter. A "person" includes an "individual, partnership, and corporation." 11 U.S.C. § 101(41). Again, it is clear, the Magistrate Judge is not a partnership or a corporation, but she also is not an "individual." The Magistrate Judge does not act as an individual when adjudicating but acts in her official capacity. Additionally, the Magistrate Judge is not a "governmental unit", which is defined as a "department, agency or instrumentality of . . . a municipality." 11 U.S.C. § 101(27) (in relevant part). The Magistrate Judge is not, herself, a department or agency, or instrumentality of the County. She is empowered only to fulfill the obligations of her judicial office, which do not include representing or acting on behalf of the County.

For these reasons, Plaintiff's Section 362 claim—which derives from the Magistrate Judge (and her staff) mailing a notice of status conference and trial summons to the Plaintiff—must fail because the Magistrate Judge is not an "entity" for purposes of Section 362(a). *See Valentine v. Valentine (In re Valentine)*, 611 B.R. 622, 645 (Bankr. E.D. Mo. 2020) ("The state court judge did

not meet the statutory definition of an 'entity' for purposes of violations of the automatic stay."). It is axiomatic that the County cannot be held liable for a stay violation where the specific actors alleged to have violated the automatic stay do not fall within the definition of "entity" for purposes of Section 362(a).

Lastly, it is noteworthy that even if the Magistrate Judge was deemed an "entity" for purposes of Section 362(a), she still would not have violated the automatic stay. Namely, she did not "commence or continue" the state court action against Ms. Johnson. Judges do not commence or continue the prosecution of a legal action; a party does. Furthermore, the County is not, and never has been, a creditor in Ms. Johnson's bankruptcy case. (Compl. ¶ 7, Ex. B). Indeed, it is difficult to imagine how any conduct by the County can be characterized as "egregious creditor activity." (Compl. ¶ 18).

In short, viewing the allegations in the Complaint as true, Plaintiff's Section 362 claim against the County must fail. Plaintiff's claim arises out of judicial acts taken by the Magistrate Judge and Magistrate Clerk, which are subject to absolute judicial immunity and quasi-judicial immunity. Even if Plaintiff could show that judicial immunity does not flow to the County, the claim must still fail; the County cannot be held liable for alleged misconduct by the Magistrate Judge because it has no control as to the manner in which she performs her official duties and whom it cannot hire, fire, discipline or train relative to the performance of her official duties. Plaintiff's claim also is barred because the Magistrate Judge is not an "entity" subject to liability under Section 362(a).

## **CONCLUSION**

For the reasons set forth above, Plaintiff's Complaint should be dismissed pursuant to FRCP 12(b)(6).

RESPECTFULLY SUBMITTED on this the 23rd day of May 2022, at Columbia, South Carolina.

s/ Carl H. Petkoff
Julio E. Mendoza, Jr., Court ID No. 3365
Kyle A. Brannon, Court ID No. 11509
**Carl H. Petkoff, Court ID No. 13447**
NEXSEN PRUET, LLC
1230 Main Street, Suite 700 (29201)
Post Office Box 2426
Columbia, South Carolina 29202
Telephone: 803-540-2189
Email: rmendoza@nexsenpruet.com
       kbrannon@nexsenpruet.com
       cpetkoff@nexsenpruet.com

*Attorneys for Defendant Horry County*

## CERTIFICATE OF SERVICE

I, Carl H. Petkoff of Nexsen Pruet, LLC, do hereby certify that a copy of the DEFENDANT HORRY COUNTY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, AND MEMORANDUM IN SUPPORT THEREOF was served upon the following parties in this case via the CM/NEF System at the time of filing on May 23, 2022, at Columbia, South Carolina:

| | |
|---|---|
| Matthew Breen, Esquire | Kevin Campbell, Esquire |
| Lowcountry Law, LLC | Chapter 7 Trustee |
| 1501 Belle Isle Ave, Suite 110 | Post Office Box 684 |
| Mount Pleasant, SC 29463 | Mount Pleasant, SC 29465 |
| mbreen@lowcountry-law.com | kcampbell@campbell-law-firm.com |

s/ Carl H. Petkoff
Carl H. Petkoff, Court ID No. 13447
NEXSEN PRUET, LLC
1230 Main Street, Suite 700 (29201)
Post Office Box 2426
Columbia, South Carolina 29202
Telephone: 803-540-2189
Email: cpetkoff@nexsenpruet.com

May 23, 2022
Columbia, South Carolina